**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BRENDA L. NORRIS,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. AW-05-755** |
| **GLOBAL eXchange SERVICES LONG TERM DISABILITY INCOME PLAN,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

This action is brought by Plaintiff Brenda L. Norris ("Plaintiff" or "Norris") to recover long-term disability benefits under an employee welfare benefit plan issued by Defendant Metropolitan Life Insurance Company ("MetLife"), on behalf of Defendant Global eXchange Service ("GXS") (collectively, "Defendants"), pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1332(e). Currently before the Court is Defendants' Motion for Summary Judgment [49]. The motion has been fully briefed and is ripe for consideration. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. On March 26, 2007, the Court held a hearing concerning the motion and heard from all the parties. Having considered the arguments of Plaintiff and Defendants, the Court will GRANT Defendants' Motions to Dismiss for the reasons discussed below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked as a Senior Program Manager and Operations Consultant for GXS from

1993 until August 13, 2003. As a full-time employee, Norris participated in the GXS Long-Term Disability Income Plan (the "Plan"). MetLife, is the claim administrator that issued a group policy of insurance to GXS to fund the benefits payable under the Plan. Plaintiff alleges that she was totally disabled due to depression and anxiety and has been receiving treatment for those conditions since August 14 2003. As a result, she applied for and was granted Short-Term Disability ("STD") benefits from August 14, 2003 until February 11, 2004. Still unable to work, Norris applied for Long-Term Disability ("LTD") benefits on February 11, 2004. On April 9, 2004, MetLife denied Norris's claim for LTD and informed Norris of her right to appeal within 180 days of the denial. On June 16, 2004, Norris filed an appeal with MetLife for the denial of her LTD claim, which included a report from Psychiatrist Dr. Byung Ahn, M.D. ("Dr. Ahn")[1] documenting his analysis of medical reports prepared by Dr. A. Miguel Rodriguez, Ph.D., ("Dr. Rodriguez"), a licensed clinical neuropsychologist, in conjunction with Norris's job description stating that she cannot work. In a letter dated August 3, 2004, MetLife upheld its denial of Norris's claim for LTD.

On October, 8, 2004, Norris submitted to MetLife an additional report in which Dr. Laura Estupian-Kane, Ph.D. ("Dr. Estupian-Kane"), a psychologist for the Social Security Administration ("SSA"), personally evaluated Norris's disability. On or around October 25, 2004, MetLife's claims examiner Rosemary Harmon ("Harmon") acknowledged receiving Dr. Estupian-Kane's report and sent the information to a health care professional for review the very next day. On or around October 26, 2004, Roseane Lombardi ("Lombardi"), a nurse consultant for MetLife recommended

---

[1] Dr. Janet Ciarkowski, M.D. ("Dr. Ciarkowski"), Norris's primary care physician, referred Norris to Dr. Ahn for a second opinion around November/December 2003, which concluded on January 2, 2004, regarding Dr. Ciarkowski's January 22, 2004 conclusion that Norris had been unable to perform any job duties since August 14, 2003. (Pl. Opp. at 9)

referring the file back to "NMR" for review of the additional information.  Still, Harmon decided that the new medical information submitted by Norris, which included Dr. Estupian-Kane's June 30, 2004 evaluation, did not support Norris's inability to perform the duties of her of her own occupation as of February 10, 2004.

Pursuant to 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") , 29 U.S.C. § 1132(a)(1)(B), Norris filed a one-count complaint for Declaratory Judgment for benefits due under the Plan, in the Circuit Court for Montgomery County, Maryland against GSX and MetLife.  On March 17, 2005 the action was removed to this Court.  On April 18, 2005, Defendants filed an answer to the complaint.  Subsequently, on June 19, 2006, Defendants filed a Motion for Summary Judgment.[2]  Currently before the Court is Defendants' motion for summary judgment.  Plaintiff opposes the motion.  The motion is ripe, and the Court now issues this opinion.

## DISCUSSION

A.     Summary Judgment Principles

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. *See Fed. R. Civ. P.*

---

[2] On July 3, 2006, after Defendants filed their motion, Norris received a letter from the SSA indicating a "fully favorable" decision in her case. According to the SSA, Norris is totally disabled and cannot participate in any substantial gainful employment in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(B)(2006); 20 C.F.R. § 404.1505(a)(2006). On July 25, 2006, Norris's counsel sent a letter to Defendants' counsel notifying them of the SSA's approval of Norris's claims. On September 21, 2006 Norris's counsel provided Defendants' counsel with the specific awards Norris received.

*56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. *Id.* at 255.

    B.    Applicable ERISA Principles

In determining the standard of review for a denial of benefits under ERISA, a court must first decide whether the language of the plan grants the plan administrator discretion to determine the claimant's eligibility for benefits. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). If the plan confers discretion, the court reviews the decision to deny benefits for abuse of discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). Under this deferential standard, the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently. *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997). Such a decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (internal quotations omitted). In the present case, MetLife has discretionary authority to make eligibility determinations,[3] thus triggering an abuse of discretion standard.

---

    [3]    The plain language of the Plan grants MetLife the decision making authority over interpretation of the Plan and eligibility for disability benefits:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it

In support of her claim, Norris contends that MetLife, acting as both the claim administrator and insurer, has an inherent conflict of interest when it denied her benefits. Norris alleges that any disability payments would be made by MetLife, and therefore, the decision to deny benefits has a direct financial effect on the profitability of the company. Norris correctly notes that, because MetLife is both the claim administrator and insurer, the abuse of discretion standard must be modified to reflect this potential conflict of interest.

The Fourth Circuit has established "a well-developed framework" for consideration by a reviewing court of the potential conflict of interest existing here. *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997); *see also DiCamillo v. Liberty Life Assurance Co.*, 287 F. Supp. 2d 616, 622 (D. Md. 2003) (stating that "a 'modified' abuse of discretion standard applies because of the potential conflict of interest arising from defendant's dual role as decision-maker and insurer"); *Thomas v. Liberty Life Assurance Co.*, 226 F.Supp.2d 735, 741 (D. Md. 2002) (stating that, when a defendant's exercise of discretion "had a direct financial effect on its profitability," the modified abuse of discretion standard applies). Specifically, the Fourth Circuit has recognized that where "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Elliott*, 190 F.3d at 605 (internal citations omitted); *see also Bailey v. Blue Cross and Blue Shield*, 67 F.3d 53, 56 (4th Cir. 1995), *cert. denied*, 516 U.S. 1159 (1996) (stating that if a conflict of interest exists under ERISA, "the fiduciary will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting

---

can be shown that the interpretation was arbitrary and capricious.
Def. Exh. 9, "Employee Benefit Plan, Discretionary Authority paragraph"

from the conflict"); *Ellis*, 126 F.3d at 233 (stating that if a conflict of interest exists under ERISA, a court should not deviate from the abuse of discretion standard, rather "the court modifies that abuse of discretion standard according to a sliding scale"). A court must apply the conflict of interest factor on a case-by-case basis, deviating from the usual abuse of discretion standard of review "only to the extent necessary to counteract any influence unduly resulting from the conflict." *Ellis*, 126 F.3d at 233.

Applying these principles, the Court must determine on the record before it whether MetLife's decision was based on substantial evidence and whether its review process was thorough and evinced a deliberate, principled reasoning process. *Id.* at 234. Presented with a potential conflict of interest, this Court should also review the merits of MetLife's decision to deny Norris benefits to determine whether that decision was consistent with an exercise of discretion by an administrator, acting free of the interests which would conflict with those of the beneficiary. *Id.* at 233. Furthermore, the Court notes that, due to the deferential standard of review in ERISA cases, the Court's review of the administrator's decision should be based on the record before the administrator. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994).

   C. Analysis of MetLife's Claim to Summary Judgment

The Court believes that MetLife's decision was based on a deliberate and principled reasoning process. The claim file which formed the basis of MetLife's decision contained medical records, statements filled out by various physicians, questionnaires completed by Norris, a Disability Claim Employee Statement, a Personal Profile, copy of Plaintiff's job description and explanation of the functional requirements of the job, a telephone interview with the Plaintiff, and other

6

miscellaneous records. MetLife reviewed all of the information that was collected and determined that Norris's medical information did not support her inability to perform her occupation. Ultimately, MetLife determined there was a lack of evidence that would render Norris disabled as defined by the Plan. The Plan contains the following definition of disability:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 12 month period (18 month period if work-related), you are unable to earn more than 80% of your Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 12 month period (18 month period if work-related), you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

As a Senior Program Manager and Operations Consultant, Norris was responsible for developing systems solutions for large corporations. On a daily basis, Norris was required to manage client expectations, resources, budgets, schedules, and project plans, work on client and executive briefings, engage in risk identification and contingency planning, devise and manage project plans and integrated schedule, manage conflicting internal business priorities, and work on solution requirements and high level concept and design sessions. Based on the information in the case file, including the occupational requirements of Norris's position, MetLife concluded that Norris was able to perform the duties of a Senior Program Manager and Operations Consultant.[4]

In making its decision that Norris was not disabled under the Plan, MetLife relied in part

---

[4] MetLife determined that Plaintiff was not disabled in February 2004, pursuant to the "own occupation" definition of disability. MetLife was, therefore, not called upon to make a claim determination under the "any gainful occupation" definition applicable after 12 or 18 months.

upon Wendy Wergin-Slobe, BSN, MSW ("Wergin-Slobe"), a Psychiatric Clinical Specialist ("PCS"). After gathering records requested from Plaintiff and her health care providers, Wergin-Slobe consulted an Independent Physician Consultant ("IPC"). In reviewing Norris's claim, MetLife obtained an independent peer review of Norris's case file by Dr. Gosoline. In the opinion of Dr. Gosoline, the IPC, there was no objective psychological testing to support the alleged severity of Plaintiff's cognitive impairments.[5] Upon review of Dr. Rodriguez's evaluation, Dr. Ciarkowski's notes, and Dr. Ahn's office notes, Dr. Gosoline concluded that Plaintiff may have sustained a mild-reduction in processing speed, attention/concentration, and general intellectual functioning, which may be affecting Plaintiff's emotional distress and her ability to perform.[6] However, aside from Plaintiff's self reports included in the evaluations, Defendants determined that there was no objective evidence to support Plaintiff's complaints and therefore, the claim was denied.

MetLife cannot arbitrarily ignore the opinions of Norris's treating physicians; however, it may reasonably choose to value the opinions of its own medical consultants over her treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (holding that ERISA does not require plan administrators to give special deference to treating physicians' opinions, although administrators may not arbitrarily refuse to credit them). Here, an IPC reviewed Norris's

---

[5] Norris challenges Dr. Gosoline's conclusions on the grounds that Dr. Gosoline did not personally examine Norris. The record, however, shows that MetLife transmitted a complete copy of MetLife's medical records, which included Dr. Rodriguez's examination of Norris to Dr. Gosoline prior to his independent review.

[6] In cases where a plan administrator is acting under a conflict of interest, this Court has noted that failure to request an independent medical examination or conduct an independent review of the claimant's medical records is particularly significant in finding that the plan administrator abused its discretion. *DiCamillo v. Liberty Life Assur.*, 287 F. Supp. 2d 616, 623 n.3 (D. Md. 2003) (citing *Laser v. Provident Life & Accident Ins. Co.*, 211 F. Supp. 2d 645, 650 (D. Md. 2002)).

medical records in detail. Dr. Gosoline, who reviewed Norris's medical records, concluded that Norris was able to perform her occupation. Based on the objective evidence, MetLife concluded that Norris was able to perform the duties of a Senior Program Manager and Operations Consultant.

Plaintiff argues that Defendants abused its discretion by ignoring the medical recommendations of Dr. Estupian-Kane, the Psychologist for the SSA. Dr. Estupian-Kane evaluated Norris on June 30, 2004, nearly four months after Plaintiff filed her LTD claim with Defendants. As a result, Dr. Estupian-Kane's medical evaluation of Norris's intelligence and memory are not only duplicative, but fractional, as Dr. Rodriguez's evaluation of Norris already included the testing of Norris's intelligence, memory, in addition to several other testing areas. Furthermore, Dr. Rodriguez's evaluation was initially included in the administrative record that was submitted to the IPC. Therefore, Dr. Estupian-Kane's report had very little, if any, relevance to the administrator's review of its decision that denied Plaintiff LTD benefits, as it was not before the plan administrators when they originally reviewed her claim. *See Thomas v. Liberty Life Assurance Company of Boston*, 226 F. Supp. 2d 735, 745 (D. Md. 2002) (finding that Plaintiff's reliance on the opinions of two doctors which were submitted after Defendant had Plaintiff's application for further benefits was misplaced).

During the pendency of briefing on Defendants' motion for summary judgment, Plaintiff advised Defendants that the SSA made a "fully favorable" decision in her case. Plaintiff attempts to rely on this July 3, 2006 Social Security award, where SSA determined Norris to be totally disabled and unable to participate in any substantial gainful employment in the national economy. *See* 42 U.S.C. § 1381c(a)(3)(B)(2006); 20 C.F.R. § 404.1505(a)(2006). Moreover, Plaintiff argues that Defendants refused to consider the "new evidence," specifically, Dr. Estupian-Kane's June 30,

9

2004 evaluation of Norris, which apparently served as the basis for the SSA decision. However, Plaintiff's reliance on Dr. Estupian-Kane's evaluation is misplaced. Not only did Dr. Estupian-Kane evaluate Norris three months after Defendants already denied Plaintiff's LTD claim[7], but, as indicated earlier, Dr. Estupian-Kane's examination came nearly four months after the August 2003-February 2004 time period, and therefore outside the scope of what the administrator's previously examined. Furthermore, the SSA disability standard differs from the definition of disability under the Plan. Accordingly, there is no obligation to afford the SSA decision significant weight. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999) (stating that SSA decisions are not subject to any more favorable weight than any other evidence when there is no indication that the disability standards are analogous); *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 798 (8th Cir. 2002) (holding that an Administrative Law Judge's determination that a claimant suffers from a disability under Social Security regulations does not require a plan administrator to reach the same conclusion in an ERISA case). The issue here is whether Defendants abused its discretion in denying Plaintiff's LTD claim, not whether Plaintiff is now entitled to the LTD benefits.

The Court cannot determine that Defendants' findings were contrary to what is reflected by the record, nor can the Court state unequivocally that what the Defendants determined was the absolute appropriate findings. Instead, the Court recognizes that opinions differ and if the Court were reviewing those findings de novo, the Court may very well have held a different opinion. However, as the Court is reviewing the administrator's ruling based on a modified abuse of discretion standard, the Court's review of the administrator's decision is based on the record before the administrator.

---

[7] MetLife formally denied Norris's LTD claim on April 9, 2004

In sum, the evidence supports MetLife's discretionary decision that, as the burden is on the Plaintiff, Norris fails to adequately provide any objective evidence of her disability and thus fails to substantiate sufficiently any significant abuse of discretion by the plan administrator. While MetLife has a conflict of interest, based on the reasons articulated above, the Court concludes that MetLife's decision was nevertheless "consistent with an exercise of discretion by an [administrator] acting free of the interests that conflict with those of the beneficiaries." *Ellis*, 126 F.3d at 233. The Court finds that MetLife's decision was based on substantial evidence and that its review process was thorough, deliberate, and evinced a principled reasoning process.

## CONCLUSION

For the aforementioned reasons, the Court will GRANT Defendants' Motion for Summary Judgment. This case is hereby CLOSED. An appropriate Order shall follow.

March 28, 2007
Date

/s/
Alexander Williams, Jr.
United States District Judge